UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.A.L.C., <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, Administrator of Mesa Verde ICE Processing Center; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01917-KES-CDB (HC) <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS <br><br> Doc. 1 |

This habeas action concerns the re-detention of petitioner N.A.L.C., a noncitizen who was detained and released in 2023 but was recently re-detained. For the reasons explained below, the petition for writ of habeas corpus is granted.

**I.  Background**[1]

Petitioner is an asylum-seeker from Venezuela. Doc. 1 at ¶ 14. He entered the United States on September 10, 2023 and turned himself in to immigration officials, who initially detained him. Doc. 1-1, N.A.L.C. Decl. at ¶¶ 3–4. A month later, immigration officials provided

---

[1] The facts set out in this section come from petitioner's verified petition and other evidence in the record. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)).

1

petitioner with a notice to appear for removal proceedings pursuant to 8 U.S.C. § 1229a and released him on his own recognizance pending those proceedings. Doc. 1 at ¶¶ 25, 28; Doc. 1-4, Ex. 2. They provided him with a Form I-220A Order of Release on Recognizance which stated that he was being released "in accordance with" 8 U.S.C. § 1226.[2] Doc. 1-4, Ex. 2.

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following his release, petitioner relocated to Buffalo, New York. Doc. 1 at ¶ 26. He worked in construction and cleaning jobs, and he used the money he earned to support his daughters and father, who live overseas. *Id.*; Doc. 1-1, N.A.L.C. Decl. at ¶ 8. Petitioner sought relief in his removal proceedings by filing an application for asylum, which remains pending with the immigration court. Doc. 1-1, N.A.L.C. Decl. at ¶¶ 9–10. Respondents do not dispute petitioner's assertions that he complied with all conditions of his release and maintained a clean criminal record. *See id.* ¶¶ 6–8; Doc. 10.

On August 7, 2025, immigration authorities conducted a traffic stop of a company vehicle in which petitioner was a passenger. Doc. 1-1, N.A.L.C. Decl. at ¶ 11. Immigration authorities arrested petitioner and several of his co-workers. *Id.*; Doc. 1-5, Ex. 3. Petitioner asserts that they

---

[2] Respondents' opposition incorrectly characterizes petitioner's release as parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Doc. 10 at 7–8. "Parole pursuant to § 1182(d)(5)(A) is a distinct procedure from conditional release pursuant to § 1226(a)." *Chavarria v. Chestnut*, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); *see Ortega–Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007) (explaining that conditional parole under § 1226(a) is different than parole under § 1182(d)(5)(A)); *Matter of Castillo–Padilla*, 25 I. & N. Dec. 257, 258 (BIA 2010) (holding that "conditional parole" under § 1226(a)(2)(B) is a "distinct and different procedure" from "parole" under § 1182(d)(5)(A)). The record reflects that petitioner was released on "conditional parole" pursuant to 8 U.S.C. § 1226, not parole under 8 U.S.C. § 1182(d)(5)(A).

did not explain why he was being arrested. Doc. 1-1, N.A.L.C. Decl. at ¶ 11. Petitioner was then transported through several detention centers; he is now detained at Mesa Verde ICE Processing Center in Bakersfield, California. Doc. 1 at ¶ 30. Respondents assert that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is not entitled to a bond hearing. Doc. 10 at 4–7.

On December 18, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2. The Court informed the parties that it intended to rule directly on the petition. Doc. 6. Respondents filed an opposition on December 23, 2025. Doc. 10. Petitioner filed a reply on January 4, 2026. Doc. 11.

## II.     Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    Discussion

Petitioner argues that the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger. Doc. 1 at ¶¶ 32–74. Respondents assert that petitioner has no procedural due process rights and can be held in detention without a bond hearing because he is subject to the "entry fiction" doctrine. Doc. 10 at 4–6.

The Supreme Court has noted the distinction "between those aliens who have come to our

3

shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). But those at the threshold of initial entry typically have only those rights provided by statute. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

The "entry fiction" extends this distinction "to some individuals within the United States but who, as a result of their status, are deemed technically to be outside." *Xi v. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002). For example, "[w]hen an alien arrives at a port of entry—[such as] an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). The entry fiction limits a noncitizen in such circumstances to "only those rights *regarding admission* that Congress has provided by statute." *Id.* at 140 (emphasis added); *see also Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (addressing the distinction between a challenge to admission and a challenge to detention and holding that *Thuraissigiam* does not foreclose a challenge to detention). In *Thuraissigiam*, the Court held that this doctrine applied when immigration officials apprehended a noncitizen 25 yards past the border; in that circumstance, the noncitizen could not be considered to have "effected an entry." *See Thuraissigiam*, 591 U.S. at 114, 140.

Respondents ask the Court to apply the "entry fiction" doctrine to petitioner, but here the government did not treat petitioner as if he had been stopped at the border when it detained him after his entry.[3] Respondents argue that the entry fiction applies because petitioner presented

---

[3] A noncitizen deemed to be at the border is limited to "those rights regarding admission that Congress has provided by statute"; the Due Process Clause does not provide further rights with respect to such admission. *Thuraissigiam*, 591 U.S. at 140. "That rule rests on fundamental propositions: The power to admit or exclude aliens is a sovereign prerogative; the Constitution

1  himself for inspection at the border.  Doc. 10 at 3–4.  It is unclear from the record whether

2  petitioner entered at a port of entry and was inspected or whether he entered without inspection

3  and later turned himself in.  While respondents point to the statement in petitioner's declaration

4  that he "came into the United States on or about September 10, 2023, through Texas, and turned

5  myself in to the immigration officers," Doc. 1-1, N.A.L.C. Decl. at ¶ 3, the government's Form I-

6  213 states that petitioner informed the immigration authorities who arrested him in 2025 that he

7  "illegally entered the United States somewhere near Brownsville, Texas."  Doc. 1-5, Ex. 3.  But,

8  regardless, the immigration officials who initially detained and released petitioner did so under

9  § 1226; they did not treat him as if he had been stopped at the border and was subject to § 1225.[4]

10  Doc. 1-4, Ex. 2.  They provided him with a Form I-220A Order of Release on Recognizance,

11  which stated that he was being released "in accordance with" 8 U.S.C. § 1226(a).  Doc. 1-4, Ex.

12  2.

13  Section 1226(a) is the discretionary detention authority for "aliens already present in the

14  United States."  *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *see Cardenas v. Alomar*, No.

15  25-CV-9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (noting the "scores of

16  decisions" that have reached this conclusion).  Under that statute, petitioner has the right to a

17  bond hearing before an immigration judge, *see* 8 C.F.R. § 1236.1(d)(1), and he must be released

18  on bond if he can "establish to the satisfaction of the Immigration Judge . . . that [he] does not

19  present a danger to persons or property, is not a threat to the national security, and does not pose a

20  risk of flight."  *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017)  (quoting *In re Guerra*,

---

gives the political department of the government plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* (internal citations and quotation marks omitted).  But the power to deny admission at the border does not eliminate due process rights with respect to detention for noncitizens whom the government has elected to release into the country.  *See Zadvydas v. Davis*, 533 U.S. at 693 (noting "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

[4] "The responsibilities of officials with respect to noncitizens at the border" and other ports of entry "are set out in 8 U.S.C. § 1225."  *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1118 (9th Cir. 2025).

24 I. & N. Dec. 37, 38 (BIA 2006)); *see also Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 (9th Cir. 2018) (noting that "the BIA has recognized that" when a noncitizen has previously been released pursuant to § 1226(a), "'no change should be made . . . absent a change of circumstance'" (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)).

The government also placed petitioner in removal proceedings in 2023 pursuant to 8 U.S.C. § 1229a rather than expedited removal proceedings. Doc. 1 at ¶ 1. While those covered by § 1225(b)(1) are subject to an expedited removal process, *see* 8 U.S.C. § 1225(b)(1), those in removal proceedings pursuant to 8 U.S.C. § 1229a have more robust rights to contest their removal, *see* 8 U.S.C. § 1229a.[5] Although it is unclear from the record precisely where and when petitioner was stopped after crossing the border, the government itself treated petitioner as a person who had entered and was already present in the country.

This fact undermines respondents' attempt to apply the entry fiction doctrine. The government's prior conduct in releasing petitioner subject to § 1226(a) is inconsistent with respondents' new claim that petitioner is subject to the entry fiction doctrine. While "the line between when a person is 'seeking admission' as opposed to being 'already in the country' is not necessarily obvious" in all cases, *see Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480, at *5 (N.D. Ill. Oct. 21, 2025), here immigration officials implicitly determined that petitioner was "already present in the country" when they released him on an order of release on recognizance pursuant to 8 U.S.C. § 1226(a) and placed him in removal proceedings pursuant to 8 U.S.C. § 1229a.

The Court finds that petitioner has a due process right to challenge his re-detention without a bond hearing. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second

---

[5] Respondents argue that those subject to 8 U.S.C. § 1225(b)(2)(A) are also placed in § 1229a removal proceedings like individuals subject to 8 U.S.C. § 1226(a). Doc. 10 at 7. But as respondents note, the "only exception" to mandatory detention under § 1225(b)(2)(A) is parole under § 1182(d)(5)(A). Doc. 10 at 6 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018)). And the record shows that petitioner was not paroled pursuant to § 1182(d)(5)(A); rather, the government's own records show it released him in 2023 pursuant to § 1226(a) pending his removal proceedings. Doc. 1-4, Ex. 2.

examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar. Among other things, it allowed him to live in the United States, work to support his family, and

seek relief in his removal proceedings. These actions were made possible by petitioner's freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Respondents argue that the government's prior conditional release of petitioner pursuant to 8 U.S.C. § 1226(a) should not prevent them from re-evaluating that decision and subjecting petitioner to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). *See* Doc. 10 at 4–7, 9–10. The argument that § 1225(b)(2) could, by its terms, apply to petitioner is incorrect for the reasons set forth in *Crispin M. C. v. Noem*, No. 1:25-CV-01487-KES-HBK (HC), 2026 WL 70553 (E.D. Cal. Jan. 8, 2026).[6]

Even if respondents were correct that section 1225(b)(2)(A) could apply to petitioner, the government previously represented to him, by releasing him on his own recognizance, that he had been released pursuant to section 1226(a). Doc. 1-4, Ex. 2. Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) thus created a reasonable expectation that he would be entitled to retain his liberty so long as he was not a flight risk or danger. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). As another court recognized in this context, once the government "elect[s] to proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Even if section 1225(b)

---

[6] Respondents make only one statutory argument here that was not considered in *Crispin M. C. v. Noem*. They argue that, because petitioner had been present in the United States for less than two years when he was re-detained, he can be subject to 8 U.S.C. § 1225(b)(2)(A). Doc. 10 at 1–4. But section 1225(b)(2)(A) does not reference a 2-year period. Respondents' argument appears to confuse section 1225(b)(1) with section 1225(b)(2). And section 1225(b)(1) does not apply here. The Form I-220A Order of Release on Recognizance establishes that immigration authorities released petitioner in 2023 on conditional parole pursuant to 8 U.S.C. § 1226(a), so he is not "[a]n alien . . . who has not been admitted or paroled" under § 1225(b)(1)(A)(iii)(II). *See* Doc. 1-4, Ex. 2; 8 U.S.C. § 1226(a) (permitting the government to release a detainee on "conditional parole").

*did* apply, petitioner has a protected liberty interest based on the government's prior representation to him that his release was pursuant to section 1226, combined with the nearly two years he spent at liberty following that representation.

The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly two years in reliance on the government's previous representations that he was being released pending his removal proceedings. His detention denies him that freedom.[7]

---

[7] Respondents, citing *Zadvydas* and several other prolonged detention cases, argue that petitioner's interest is low because he has not been detained for a long period of time. Doc. 10 at

1    Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the
2    petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No.
3    1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil
4    immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a
5    noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690;
6    *Padilla*, 704 F. Supp. 3d at 1172.  Respondents appear to concede that petitioner is not a danger
7    or a flight risk.  *See* Doc. 10 at 11 ("Even if Petitioner specifically does not appear to be a danger
8    or flight risk, the Government has a strong interest in effectuating the system Congress devised.").
9    As there have been no procedural safeguards to determine if petitioner's re-detention is justified,
10   "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *A.E.*, 2025
11   WL 1424382, at *5.

12   Third, although the government has a strong interest in enforcing the immigration laws,
13   the government's interest in detaining petitioner without a hearing is "low."  *Ortega v. Bonnar*,
14   415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95
15   (E.D. Cal. 2025).  In immigration court, custody hearings are routine and impose a "minimal"
16   cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-arrest [petitioner] at any
17   point, it has the power to take steps toward doing so; but its interest in doing so without a hearing
18   is low."  *Ortega*, 415 F. Supp. 3d at 970.

19   On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing.  At
20   such a hearing, the government must prove that he is a flight risk or danger to the community by
21   clear and convincing evidence.  *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL
22   2935630, at *13–14 (N.D. Cal. Oct. 15, 2025); *Duong v. Kaiser*, No. 25-CV-07598-JST, 2025
23   WL 2689266, at *8 (N.D. Cal. Sept. 19, 2025); *see also Addington v. Texas*, 441 U.S. 418, 425–
24   33 (1979) (holding that clear and convincing evidence standard was appropriate standard of proof
25   for civil commitment proceedings for the mentally ill).  And that hearing should have occurred

---

27   10.  However, this case is not about prolonged detention; it is about petitioner's re-detention without a bond hearing given the liberty interest that arose when immigration authorities released
28   him for nearly two years.

10

before petitioner was re-detained.  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").  Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing.  *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).  Respondents appear to concede that petitioner is not a danger or flight risk.  *See* Doc. 10 at 11.  The Court concludes that "a *pre*-deprivation hearing is required to satisfy due process."  *Guillermo M. R.*, 791 F. Supp. 3d at 1036.

## IV.   Conclusion and Order

Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED.  Respondents are ORDERED to release petitioner immediately.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

The Clerk of Court is directed to close this case and enter judgment for petitioner.

IT IS SO ORDERED.

Dated:   January 18, 2026

UNITED STATES DISTRICT JUDGE