UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

N.A.L.C.,

Petitioner,

v.

MINGA WOFFORD, *et al.*,

Respondents.

Case No. 1:25-cv-01917-KES-CDB (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITIONER'S MOTION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 2412

(Doc. 18)

**14-Day Deadline**

Petitioner N.A.L.C. ("Petitioner"), formerly a federal detainee proceeding by counsel, initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

Pending before the Court is the motion of Petitioner's counsel for the award of attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. 18). Respondents Minga Wofford (Field Office Director, Mesa Verde), Sergio Albarran (Field Officer Director of the Immigration and Customs Enforcement ("ICE")), Todd M. Lyons (formerly Acting Director of ICE), Kristi Noem (formerly Secretary of the Department of Homeland Security ("DHS")), and Pamela Bondi (formerly Attorney General of the United States) (collectively, "Respondents") filed an opposition (Doc. 22).

///

Petitioner did not file a reply and the time to do so has passed.[1]

## I.     Relevant Background

Following the parties' briefing on Petitioner's application for temporary restraining order and the merits of the petition, on January 18, 2026, the Court granted the petition and ordered that Respondents release Petitioner immediately, finding that Petitioner had a protected liberty interest and that due process requires a pre-deprivation hearing. (Doc. 16). Judgment for Petitioner was entered thereafter. (Doc. 17).

## II.    Governing Authority

The EAJA provides for an award of attorney fees and costs to private litigants who prevail "in any civil action (other than cases sounding in tort)" against the United States and timely file a petition for fees. 28 U.S.C. § 2412(d)(1)(A). Under the EAJA, a court shall award attorney fees to the prevailing party unless it finds the government's position was "substantially justified or that special circumstances make such an award unjust." 28 U.S.C. § 2412(d)(1)(A).

## III.   Discussion

Respondents oppose Petitioner's motion for award of attorney's fees and costs on two grounds: (1) that the EAJA does not permit the award of attorneys' fees here because the underlying habeas corpus proceeding is not a "civil action"; and (2) that the EAJA does not permit the award of attorneys' fees here because Respondents' position was "substantially justified." *See* (Doc. 22).

**A. Whether This Proceeding is a "Civil Action" Under the EAJA**

Respondents note that the EAJA expressly limits its provision for an award of attorneys' fees and expenses to a party that prevails against the United States in a "civil action." Respondents argue that the EAJA's use of this language constitutes only a "partial" waiver of sovereign immunity that must be strictly interpreted in favor of the United Stages. (Doc. 22 at 3-8, citing *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991)). In brief, according to Respondents, because a habeas corpus action challenging one's immigration detention is not "unambiguously" a "civil action," the EAJA does not operate to waive sovereign immunity.

---

[1] On April 22, 2026, the presiding district judge referred the motion to the undersigned for preparation of findings and recommendations. (Doc. 19).

2

In support of this argument, Respondents note that the Supreme Court has found that a habeas proceeding does not constitute a "civil action" as that term is used in 28 U.S.C. § 1391(e). *Id*. (citing *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971)).  This argument is unconvincing for two reasons.  First, the Supreme Court in *Schlanger* relied on the legislative history of the passage of § 1391(e), the statute governing nationwide service of process in a "civil action," and concluded it did not support a finding that Congress intended to expand habeas jurisdiction through inclusion of such cases in its "civil action" ambit.  Naturally, that legislative history does not bear on whether the usage of "civil action" in the EAJA includes habeas proceedings.  Second, the fact that the Supreme Court has found a habeas proceeding does not constitute a "civil action" as that term is used in one statute does not compel a finding that a habeas proceeding cannot constitute a civil action for purposes of a different statute – particular where, as Respondents acknowledge, the Supreme Court has found that habeas corpus proceedings are "technically 'civil'" in general. *Schlanger*, 401 U.S. at 490 n.4.

Respondents acknowledge that the Ninth Circuit has held that EAJA fees are available in the context of some immigration habeas actions.  (Doc. 22 at 7-8, citing *In re Hill*, 775 F.2d 1037, 1040-41 (9th Cir. 1985)).  However, Respondents argue the Ninth Circuit did not address or expressly resolve in *Hill* whether an immigration habeas action is a "civil action"; rather, instead of interpreting the statutory text, the Ninth Circuit reasoned that the award of fees in that case was consistent with EAJA's "structure and purpose."

Respondents argue that more recent decisions by the Fourth and Fifth Circuit[2] finding that habeas proceedings do not unambiguously fit EAJA's "civil action" definition are more faithful to the Supreme Court's command to interpret a statute's ambiguous terms in favor of immunity.  (Doc. 22 at 7, citing *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012)).

Both the Third Circuit and Tenth Circuit recently have held that the EAJA "unambiguously" encompasses habeas challenges to immigration detention, expressly finding that such proceedings qualify as "civil actions" and that, accordingly, prevailing petitioners are eligible for an award of

---

[2] *Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023), *cert denied* 144 S.Ct. 553 (Jan. 8, 2024); *Obando-Seguro v. Garland*, 999 F.3d 190 (4th Cir. 2021).

3

fees. *See Michelin v. Warden*, 169 F.4th 418, 424-25 (3d Cir. 2026), *pet. for rehrn'g by panel en banc den'd*, 169 F.4th 160 (3d Cir. 2026); *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025). In reaching this conclusion, both courts relied, in part, on the EAJA's use of the phrase "*any* civil action (*other than* cases sounding in tort)" [emphasis added] as the qualifying language entitling a prevailing party to seek an award of fees.

In light of the Supreme Court's characterization in *Schlanger* that habeas corpus proceedings are "technically 'civil'" actions, coupled with EAJA's applicability to "any" civil action except an expressly identified category of cases (*e.g.*, "other than cases sounding in tort"), which category unquestionably does not apply here, the Court agrees that the better interpretation of the term "any civil action" in the EAJA is that it unambiguously includes habeas proceedings challenging immigration detention.

**B. Whether Respondents' Position was "Substantially Justified" Under the EAJA**

Respondents argue Petitioner should not be awarded fees under the EAJA because the government's positions in this litigation were substantially justified.

To defeat a prevailing party's claim to attorney's fees under the EAJA, the government bears the burden of showing that its position was substantially justified. *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (citing *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005)). To be substantially justified, the government's position must have a "reasonable basis" in law and fact. *Id.* (citations omitted). "When evaluating the government's 'position' under the EAJA, [courts] consider both the government's litigation position and the 'action or failure to act by the agency upon which the civil action is based.'" *Ibrahim v. U.S. Dep't of Homeland Security*, 912 F.3d 1147, 1168 (9th Cir. 2019) (*quoting* 28 U.S.C. § 2412(d)(1)(B)).

Respondents maintain in opposition to Petitioner's fee motion that their prelitigation and litigation positions were substantially justified given that Petitioner's detention was pursuant to a statute they assert mandates detention (*see* Doc. 22 at 9-10, citing 8 U.S.C. § 1225(b)). Even if that premise is true, Respondents continue to unreasonably discount the applicability of the Due Process Clause under the Fifth Amendment to the U.S. Constitution when, as here, immigration authorities seek to maintain custody of a noncitizen who had been released on parole, without any determinate

endpoint or assertions of violations of conditions of release. In Respondents' characterization of governing precedent, § 1225(b)'s provision for mandatory detention pending completion of removal proceedings entirely displaces applicability of the Due Process Clause such that indeterminate detention is not only warranted, but required. Thus, Respondents argued here that Petitioner has no liberty interest that could implicate a due process right to release because he never was lawfully admitted to the United States. *See* (Doc. 10 at 8) (arguing "aliens who have not effected a legal entry … are entitled only to '[w]hatever the procedure authorized by Congress is.'") (citation omitted; alteration in original).

But in making this argument, Respondents have *never* attempted to reconcile that after ICE detained Petitioner, Respondents then paroled him into the country, implicitly finding that his release presented neither flight nor danger risks. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Nor do Respondents refute or grapple with the fact that, for the nearly two-year period following his release, Petitioner successfully complied with all conditions of his release. *E.g.*, *Tzafir v. Blanche*, No. 25-cv-02126-JHC, 2026 WL 1413606, at *2 (W.D. Wash. May 20, 2026) (finding government's position not substantially justified where petitioner was ordered removed but then released on an order of supervision, complied with all conditions of release for years, and eventually was rearrested; reasoning, "when revoking a noncitizen's OSUP, the government must articulate changed circumstances in the noncitizen's case").

In addressing a related provision of the INA governing mandatory detention of certain noncitizens, the Supreme Court has recognized that such mandatory detention "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (interpreting § 1226(c)). The most reasonable interpretation of *Preap* is that immigration detainees retain procedural due process rights notwithstanding the operation of a statute providing for a detainee's mandatory detention. Indeed,

5

this interpretation – that statutory detention regimes are not to the exclusion of and do not displace a detainee's rights under the U.S. Constitution – is consistent with the Supreme Court's earlier holdings acknowledging this principle. *See Zadvydas v. Davis*, 533 U.S. 678, 693, 695 (2001) (holding that the government's statutory authority to detain noncitizens pending removal "is subject to important constitutional limitations" because due process applies to anyone in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent"); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (reiterating that a noncitizen who successfully enters the United States and afterwards is subject to removal proceedings retains due process rights) (citing cases), *superseded by statute on other grounds as stated in Dep't of Homeland Security v. Thuaissigiam*, 591 U.S. 103, 135 (2020). In light of this authority and the circumstances set forth above, Respondents' contention that the Due Process Clause does not operate when an immigration detention statute applies is not substantially justified because such a position does not have a "reasonable basis" in law and fact. *Thangaraja*, 428 F.3d at 874.

### C. Respondents' References to Ninth Circuit Appeal

Respondents assert that the Court should hold any order on Petitioner's motion in abeyance pending the Ninth Circuit's ruling in *Rodriguez Vasquez v. Bostock*, No. 25-6842. Respondents assert that *Rodriguez Vasquez* involves the "same issue present in this case" regarding the application of § 1225 and, if the Ninth Circuit adopts the government's position in that case, it would "confirm that the Government's position in this case was substantially justified." (Doc. 22 at 10-11).

Having found above that Respondents' position was not "substantially justified," the undersigned will not recommend holding the matter in abeyance pending said appeals. *See, e.g.*, *T.M. v. Warden, California City Corr. Ctr.*, No. 1:26-cv-02667-TLN-SCR, 2026 WL 1045525, at *4 n.2 (E.D. Cal. Apr. 17, 2026) (declining to "delay issuing relief on the prospective chance" that an appeal may change the outcome of a claim).

### D. Whether Petitioner's Fee Request is Reasonable

In determining what constitutes "reasonable" attorney's fees under the EAJA, "the district court must apply the hybrid approach adopted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)."

6

*United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1991). "First, the district court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [citation omitted]. Next, in rare instances, the court may increase or reduce the presumptively reasonable lodestar fee on the basis of factors" that are not captured by the lodestar calculation. *Id*.

The Ninth Circuit maintains a list of the statutory maximum hourly rates authorized by the EAJA, adjusted for increases in the cost of living, on its website. *See Thangaraja*, 428 F.3d at 876-77; "Statutory Maximum Rates Under the Equal Access to Justice," available at https://www.ce9.uscourts.gov/criminal-justice-act/statutory-maximum-rates/ (last visited June 12, 2026). This maximum rate (presently $258.46) controls unless the district court finds that a "special factor" warrants a higher rate (*Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)), such as "where the quality of representation resulted in a degree of success beyond what would be reasonably expected at that rate." *Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 766 (9th Cir. 1985).

Here, Respondents do not contest the reasonableness of the amount of fees requested by counsel for Petitioner. (Doc. 22 at 1). According to the declaration of attorney Natalia Vieira Santanna, she and attorney Otavio Haverroth Silva, as counsel for Petitioner, spent approximately 13.6 hours on tasks associated with litigating the merits of the case. Additionally, counsel for Petitioner seeks to recover for approximately 27.8 hours of time spent by their two paralegals on the litigation. (Docs. 18-1, 18-3). Counsel attach the signed declaration of Petitioner N.A.L.C. in support of the motion. (Doc. 18-2).

Petitioner's counsel team includes the aforementioned two attorneys. The two attorneys billed approximately 13.6 hours on all tasks associated with the petition, including preparing the petition, communicating with Petitioner, drafting the motion to proceed via pseudonym, and drafting the reply to Respondents' opposition to the petition. (Doc. 18-3).

For the sake of comparison, in an out-of-district immigration habeas case involving a similar amount of litigation as this action – the preparation and filing of a petition and motion by the petitioner to proceed by pseudonym, the litigation and hearing on the petitioner's application for

7

temporary restraining order, and the petitioner's EAJA fee motion – the petitioner's three attorneys billed 50.55 hours. *See S.F. v. Bostock*, No. 3:25-cv-01084-MTK2026 WL 1230044, at *4-6 (D. Or. May 5, 2026).   The undersigned's experience presiding over a significant number of immigration related habeas corpus cases, coupled with the hours found reasonable by the *S.F.* court in a similarly postured action, suggest that counsel's expenditure in this action of 13.6 hours is reasonable.  As to the billing entries for work conducted by paralegals, the tasks as recorded on the billing entries do not appear duplicative, consisting primarily of communication with Petitioner, collecting documents, drafting of documents, service of documents, and research.  (Doc. 18-3). The undersigned finds the total expenditure of time by the two attorneys and the two paralegals, approximately 41.4 hours, to be reasonable.

Counsel for Petitioner request paralegal fees at the rate of $150 per hour.  (Doc. 18-1). Another judge within this District recently found this to be the upper end of the prevailing paralegal rate, and the undersigned finds this rate to be appropriate.  *See Saesee v. Bisignano*, No. 1:21-cv-01562-SKO, 2026 WL 1398969, at *3 (E.D. Cal. May 19, 2026).

In sum, the Court finds as follows:

(1) Total attorney hours deemed reasonable: 13.6 * $258.46/hr. = $3,515.05;

(2) Total paralegal hours deemed reasonable: 27.8 * $150.00/hr. = $4,170.00;

(3) Total fees deemed reasonable: $7,685.05.

In light of the above, and having found the requested amount reasonable, the undersigned will recommend that the motion be granted.

**IV.    Conclusion and Recommendation**

For the foregoing reasons, it is HEREBY RECOMMENDED:

1. Petitioner's motion for the award of attorneys' fees (Doc. 18) be GRANTED;

2. Respondents be ordered to remit to counsel for Petitioner attorneys' fees and expenses in the amount of $7,685.05; and

3. This award be made payable to Petitioner, but if the Department of the Treasury determines that Petitioner does not owe a federal debt, then Respondents shall cause the payment of attorneys' fees and expenses to be made directly to Petitioner's counsel.

8

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown.  The Court will not consider exhibits attached to the objections, but a party may refer to exhibits in the record by CM/ECF document and page number.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **June 15, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

9